No. 23-1813

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

VAUGHN NEITA,

Plaintiff-Appellant,

v.

CITY OF CHICAGO, CHICAGO POLICE
OFFICERS KAREN RITTORNO, and
DOMINGO ENRIQUEZ, JR.,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Northern District Of Illinois,
Case No.  1:19-CV-00595
The Honorable Joan H. Lefkow, Judge Presiding

---

REPLY BRIEF OF
PLAINTIFF-APPELLANT VAUGHN NEITA

---

Jared Kosoglad
JARED S. KOSOGLAD, P.C.
111 N. Wabash, Suite 3166
Chicago, IL 60602
312.513.6000
Attorney for Plaintiff-Appellant
Vaughn Neita

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES .................................................. iv

ARGUMENT ....................................................................... 1

    I.    Defendants Did Not Address Plaintiff's Argument Against
        Qualified Immunity, Impermissibly Substituting Their Private
        Conceptions And Relying On Disputed Facts ...................... 1

      A.    The Law Was Clearly Established That Defendants Cannot Create
           Their Own Conceptions Of Inhumane Treatment ................ 2

      B.    Defendants Premised Plaintiff's Arrest On Lies ................... 3

      C.    Defendants Had No Reason To Doubt That Plaintiff Provided
           Macy With A Sufficient Quantity Of Food And Water ......... 4

      D.    Macy Was Adequately Sheltered And Protected From The Weather .. 4

      E.    Plaintiff Did Not Use A Choke-Type Collar ....................... 6

      F.    Defendants Do Not Explain How The Police Had Probable Cause
           To Believe ThAt Plaintiff Never Intended To Reclaim Macy
           Where Plaintiff Appeared In 15 Minutes To Claim Her ....... 8

      G.    There Is No Inhumane Treatment Of Macy ........................ 9

    II.    Judicial Admissions Bar The Defendants From
        Materially Changing Their Defenses At Summary Judgment ............. 9

    III.    The Defense Does Not Identify Any Legal Or Factual Basis For
        Denying Mandatory Sanctions For The Failure To Disclose Facts
        And Defenses Before Summary Judgment, Relegated The
        Argument To A Footnote, And Failed To Cite Pertinent Authority,
        Resulting In Waiver ....................................................... 13

IV.   Defendants Deliberately Conspired To Deprive Plaintiff Of His Right To Access The Courts And The Failure To Disclose Video Is No Mistake ........................................................................................15

V.   The District Court's Acceptance of Rittorno's Sham Defense Contradicts The District Court's Own Reasoning ............................15

VI.   Qualified Immunity For Plaintiff's Arrest Does Not Bar Plaintiff's Retaliatory Arrest Claim ....................................................18

VII.   Fourth Amendment Malicious Prosecution Should Proceed .............20

CONCLUSION ........................................................................................21

CERTIFICATE OF COMPLIANCE ......................................................22

CERTIFICATE OF SERVICE ...............................................................23

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...................................... 12

*Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir. 1985) ...................................... 19

*Colburn v. Trustees of Indiana University,* 973 F.2d 581 (7th Cir. 1992) ........ 15

*Harmon v. Gordon*, 712 F.3d 1044 (7th Cir. 2013) ......................................... 15

*Hartman v. More,* 547 U.S. 250 (2006) ........................................................... 18

*Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007).............. 21

*Katz-Crank v. Haskett*, 843 F.3d 641 (7th Cir. 2016) ...................................... 20

*Keller v. U.S.*, 58 F.3d 1194 (7th Cir. 1995) .................................................... 11

*Lexington Ins. Co. v. RLI Ins. Co.*, 949 F.3d 1015 (7th Cir. 2020) .................. 18

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) .................................................. 18-19

*Pavlock v. Mifflin*, 90 F.3d 205 (7th Cir. 1996) ................................................ 14

*People v. Curtis*, 407 Ill.App.3d 1042 (1st Dist. 2011) ............................... 2,3,5

*People v. Larson*, 379 Ill.App.3d 642 (1st Dist. 2008) ...................................... 3

*People v. Zamora*, 175 N.E.3d 700 (Ill. App. Ct. 2020) .................................... 9

*Rojas v. Town of Cicero, Ill.*, 775 F.3d 906 (7th Cir. 2015) ............................. 16

*Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991) ...................................... 14

*Tebbens v. Mushol*, 692 F.3d 807 (7th Cir. 2012) ............................................ 14

*Thompson v. Clark*, 142 S. Ct. 1332 (2022) ..................................................... 20

*Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 1997) ........................................ 7,8,14

**Statutes**

510 ILCS 70/3 ............................................................................................ 5

510 ILCS 70/3.01 ....................................................................................... 8

510 ILCS 70/3.04 ................................................................................... 19,20

Cir. R. 25 .................................................................................................. 23

Cir. R. 32 .................................................................................................. 22

Fed. R. App. P. 32 ..................................................................................... 22

Fed. R. Civ. P. 8 ......................................................................................... 9

Fed. R. Civ. P. 26 ...................................................................................... 16

Fed. R. Civ. P. 34 ...................................................................................... 16

Fed. R. Civ. P. 37 ................................................................................... 13,14

**Other Authorities**

Black's Law Dictionary, (11th ed. 2019) ..................................................... 8

# **ARGUMENT**

Defendants do not address the clearly established law Plaintiff cited in his argument, do not defend the district court's refusal to consider caselaw that provided explicit directions to police officers enforcing the animal cruelty statute, do not defend the district court's claim that Plaintiff conceded probable cause by citing relevant law, and do not address or defend the district court's substitution of suspicion for the probable cause standard.

Instead, Defendants misstate basic rules of civil procedure to this court and impermissibly argue for affirmance on grounds not presented or argued to the trial court, giving mere lip service to the duty to view the facts in Plaintiff's favor in the process. And while Defendants urge this court to believe that officers made mistakes, this Court should send a message to Chicago Police Officers that it is also a mistake to make arguments that depend on a court committing legal errors. The district court's grant of summary judgment based on qualified immunity should be reversed.

## I.     **Defendants Did Not Address Plaintiff's Argument Against Qualified Immunity, Impermissibly Substituting Their Private Conceptions And <u>Relying On Disputed Facts</u>**

Qualified immunity should not apply because Defendants created private conceptions of legal requirements for the treatment of animals and lied about Plaintiff violating them. Defendants do not address or dispute the clear law

prohibiting the criminalization of private conceptions about animal treatment or that Plaintiff's arrest was premised on lies.  Defendants' entire push for qualified immunity is undermined by their failure to address the merits of *People v. Curtis*, 407 Ill.App.3d 1042, 1049-50 (1st Dist. 2011), wherein the Illinois appellate court held that "[u]nder the plain and ordinary meaning of the statute, law enforcement officers are provided with explicit standards to apply the law in a nondiscriminatory manner."  Defendants do not and could not defend the district court's reasoning in declining to cite or apply the instructions to law enforcement from *Curtis* about how to constitutionally enforce the statute.  Appx. 11.   The district court erred by applying qualified immunity.

### A. The Law Was Clearly Established That Defendants Cannot Create Their Own Conceptions Of Inhumane Treatment

Defendants did not perceive anything inherently wrong with the condition of Macy or her heated doghouse and cannot make any case that probable cause existed, viewing the facts in Plaintiff's favor.  Terms like inhumane treatment are naturally subject to imprecise meanings, but the plain language of the statute and the case law explain to law enforcement how to apply the law in a constitutional way.  Defendants do not mention this in their analysis, at all, because Defendants have deliberately chosen to measure their misconduct under an unconstitutional and impermissible interpretation of the law.

"Law enforcement officers are bound to the plain and ordinary meaning of

the statute . . ." which provides them "with explicit standards to apply the law in a nondiscriminatory manner." *Curtis*, 407 Ill.App.3d at 1049-1050.   The statute's "'sufficiently definite standards for law enforcement officers and triers of fact,'" make sure "that its application does not depend merely on their private conceptions.'" *Curtis*, 407 Ill.App.3d at 1048 (quoting *People v. Larson*, 379 Ill.App.3d 642, 650-651 (1st Dist. 2008)).   Accordingly, the statute must "inform a person of ordinary intelligence what conduct is lawful and what conduct is unlawful." *Curtis*, 407 Ill.App.3d at 1048.

### B. <u>Defendants Premised Plaintiff's Arrest On Lies</u>

While defendants were investigating potential inhumane treatment, they found Macy unattended with access to a large, heated, well-constructed doghouse. When defendants took possession of Macy, she was playful, energetic, appeared healthy, appeared well nourished, and happened to urinate in the presence of the officers.  Officers perceived no smell of urine or feces in or around the doghouse. The dog bowls in the house were allegedly empty, but Plaintiff claimed Macy within fifteen minutes of the officers' arrival.  Defendants knew nothing else relevant.

Plaintiff was arrested because the police abused their power.  As the district court found, Plaintiff told defendants he had gone next door for a moment and the dog had not been outside very long. Appx. 5.  Defendants told Plaintiff they were

going to hold Macy for a moment to identify Plaintiff as the owner. *Id.* Rittorno got upset because Plaintiff was fact checking her and denied leaving the dog outside for days. *Id.* Plaintiff told police that Macy's microchip would identify him as the owner. *Id.* Plaintiff's sister, a Chicago Police Officer, was on speakerphone and told Plaintiff to ask for a supervisor. *Id.* Police claimed not to have one. *Id.* Rittorno grabbed Plaintiff's phone, and the police arrested him. *Id.*

Justifying the arrest, police reported that they observed Macy in the cold doghouse without food or water, without padding, and "was on the ground in the snow, instead of the required minimum 2 inches off the ground." R. 1-1, p. 2. Yet, Rittorno admits the doghouse had a heater, R. 1-3, p. 13, did not check the doghouse for padding, R. 139-6, pp. 63:12-25, 282:3-11, the two-inch "requirement" does not exist, R. 35, p. 7, ¶ 30, and did not know how long, if at all, Macy had been without food or water. R. 139-6, Rittorno Dep., pp. 73:18-20, 166:2-9. Defendants admit that no chains were used; Macy was leashed with a rope. R. 139-3, p. 28:13-20. Every alleged justification was untrue, unknown, or did not exist. Plaintiff's arrest violated clearly established law and qualified immunity does not apply.

### C. Defendants Had No Reason To Doubt That Plaintiff Provided Macy With A Sufficient Quantity Of Food And Water

Defendants ignore the word "sufficient" in their analysis because Defendants had no reasonably trustworthy information about the sufficiency of the water or

4

food given to Macy.  Defendants concede that they did not know how long Macy was unattended.  R. 139-6, Rittorno Dep., pp. 73:18-20, 166:2-9; R. 139-3, Enriquez Dep., pp. 155:17-25, 208:18-20; R. 139-4, Forfeiture Hearing Transcript, p. 20:10-15; R. 139-6, Rittorno Dep., p. 257:20-22.  Defendants had no basis to believe that the crime of depriving a dog of sufficient food or water had taken place.

Discarding the word "sufficient" to justify the arrest violates the Illinois courts' decision that "[l]aw enforcement officers are bound to the plain and ordinary meaning of the statute . . ." which provides them "with explicit standards to apply the law in a nondiscriminatory manner." *Curtis*, 407 Ill.App.3d at 1049-1050.  No person of ordinary intelligence would believe that depriving a pet of food or water for fifteen minutes would amount to mistreatment, much less subject the owner to arrest for neglect.  Inventing an unconstitutional interpretation of the law that discards the plain language of it does not create probable cause.  Qualified immunity does not apply.

### D. <u>Macy Was Adequately Sheltered And Protected From The Weather</u>

Defendants then argue that they had probable cause to believe Plaintiff did not provide Macy with adequate shelter and protection from the weather pursuant to 510 ILCS 70/3(a)(2), but their entire argument is based on disputed facts. The district court expressly found that "there is a dispute about whether [the heater]

was producing sufficient heat to make the doghouse habitable for Macy on February 7." Appx. 4, n. 3.  Leaving Macy for fifteen minutes in a heated structure with "sufficient heat to make the doghouse habitable for Macy," does not violate the law. Appx. 4, n.3.  Defendants' poor characterization of the doghouse is disputed and irrelevant.  The district court noted that the evidence contradicts Officer Enriquez' claims about Macy's behavior; Macy "does not appear to be shivering or raising her paws on the videos."  Appx. 4.

When viewing the facts in the Defendants' favor, the Court found that "[i]f Officer Rittorno's testimony is credited," about the freezing conditions inside of Macy's doghouse, the officers had probable cause to arrest Plaintiff.  R. 68, p. 3.[1] And in deciding the Defendants' summary judgment motion, the district court agreed that Rittorno's lying created "a genuine issue about Rittorno's credibility." R. 167, pp. 8-9.  Summary judgment should have been denied.

### E. Plaintiff Did Not Use A Choke-Type Collar

Defendants admit that no chains were used; Macy was leashed with a rope. R. 139-3, p. 28:13-20.  In any event, Defendants do not respond to Plaintiff's argument that evidence and argument about Macy's collar is barred by Rule 37(c) because the plain application of the exclusionary rule applies.  As a result, there is

---

[1] Rittorno's claims in her Answer about the truthfulness of her police reports and testimony were undermined by repeated admissions that she testified inaccurately and untruthfully.

no evidence that Defendants knew that Macy had a "choke-type" collar before

arresting him and nothing to rebut.  The Court must disregard reliance on

photographs not bates stamped attached to a summary judgment affidavit, where

Defendants declined any effort to amend Rittorno's testimony about the facts she

knew during Plaintiff's arrest.  Nor did defendants disclose or identify the

authorities they rely on in this appeal, including the several dictionary definitions

cited. R. 147-5, Rittorno's Answers to Pl.'s Interrogatories, pp. 8-9 ¶ 10.  Instead,

this issue comes to the Court with an adequate record because the defense violated

the Rules of Civil Procedure, and their effort is excluded from consideration under

Rule 37(c).

Moreover, as argued in this appeal, Defendants are barred from making this

claim through repeated judicial admissions omitting the collar and any facts related

thereto as a basis for probable cause, and omitted the collar and any facts related

thereto when Defendant answered an interrogatory about the facts relied on to

support probable cause, arguments Plaintiff incorporates herein.  *See* §§ II & III,

*infra.*

Defendants do not bear the burden to prove their action was reasonable, but

to shift onto Plaintiff the burden to prove Defendants' actions were unreasonable,

Defendants must disclose their knowledge that forms the basis of probable cause or

some other exception to the warrant requirement.  *Valance v. Wisel*, 110 F.3d

1269, 1278 (7th Cir. 1997).  Plaintiff's burden to prove the absence of probable cause does not apply to undisclosed facts and theories.  *Id.*

Even if Plaintiff had the opportunity to litigate and rebut this alleged claim, the defense does not explain why the allegedly unlawful collar does not appear in any of the Animal Care and Control or police records.  More importantly, Defendants do not explain how the Court of Appeals has the authority to find facts through the affidavit of a witness the district court refused to credit, by interpreting photographs without a bates stamp to undisclosed dictionary definitions, and then use those facts to find probable cause in relation to an undisclosed and un-litigated defense.  None exists.

### F.  Defendants Do Not Explain How The Police Had Probable Cause To Believe That Plaintiff Never Intended To Reclaim Macy Where <u>Plaintiff Appeared In 15 Minutes To Claim Her</u>

Defendants do not apply any definitions of the terms in 510 ILCS 70/3.01(b) because their argument that probable cause existed to believe that Plaintiff abandoned Macy is without merit.  Defendants concede Plaintiff's argument that abandonment does not mean unattended; it means the relinquishing of a right or interest with the intention of never reclaiming it. *Abandonment*, <u>Black's Law Dictionary</u>, (11th ed. 2019).  Plaintiff's arrival at the scene within ten or fifteen minutes asking for Macy to be returned is inconsistent with any belief that Plaintiff had no intention of reclaiming Macy.  Qualified immunity does not apply.

### G. There Is No Inhumane Treatment Of Macy

Defendants' claim that even though Macy appeared fine, other inhumane conditions justified Plaintiff's arrest fails because Defendant cite no other inhumane conditions, and their citation to *People v. Zamora*, 175 N.E.3d 700, 705 (Ill. App. Ct. 2020) is unpersuasive.  Their citation to the circuit court's finding at Plaintiff's forfeiture hearing, which the State lost, is inadmissible.  The effort to persuade this Court with citations to inadmissible and prejudice evidence exposes the weakness of Defendants' argument on the facts.

## II.   Defendants' Judicial Admissions Bar The Defendants From Materially Changing Their Defenses At Summary Judgment

Defendants seek to evade their judicial admissions because Defendants materially changed their defense at summary judgment and in so doing, Defendants inadvertently made a stronger case for binding Defendants to them. Defendants cite no persuasive authority for their effort and do not persuasively explain away their admissions.  Their evasion should be rejected because "[p]leadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).

Consistent with their ¶ 31 judicial admission about the material facts relied on in support of probable cause to arrest, the defense also made other judicial admissions that their police reports and testimony set forth probable cause and were accurate.  R. 35, Def. Officers' Amended Answer, p. 4, ¶ 14 (arrest report); ¶ 16 (supplemental report; p. 5, ¶ 18 (forfeiture hearing testimony), p. 6. ¶ 25 (trial

testimony).  "Defendants Rittorno and Enriquez further admit that the 'Incident

Narrative' section purports to provide 'the facts for probable cause to arrest and to

substantiate the charges.'"  *Id.* at p. 4, ¶ 14.

Consistent with their reports, testimony, the criminal charges, and

admissions, Defendants affirmatively represented until summary judgment that

they intended to claim that probable cause to arrest existed because of the

Defendant's observations of how "the female pit bull resided at the time they found

her."  R.  45, Def.'s Resp. Summ. Judg., p. 3.  Plaintiff's discovery efforts naturally

examined the defendants' claim that probable cause to arrest existed because the

doghouse did not adequately protect Macy from the weather.  The district court

denied Plaintiff's summary judgment motion on probable cause because "[i]f

Officer Rittorno's testimony is credited," about the freezing conditions inside of

Macy's doghouse, the officers had probable cause to arrest Plaintiff.  R. 68, p. 3. [2]

The district court's ultimate agreement that Rittorno's lying created "a genuine

issue about Rittorno's credibility," R. 167, pp. 8-9, should have ended the

summary judgment analysis because only a finder of fact can determine whether

Rittorno's shifting testimony is credible.

Defendants' characterization of Plaintiff's argument as a "last-ditch effort to

---

[2] Rittorno's claims in her Answer about the truthfulness of her police reports and testimony were undermined by repeated admissions that she testified inaccurately and untruthfully.

sweep aside the evidence uncovered during discovery," Def.'s Brief, p. 29, would

be more persuasive if the Defendants had disclosed the evidence during discovery.

Even in August 2021 at the end of discovery, Defendants provided the basic facts

for the Court as background in opposition to Plaintiff's motion for a protective

order over additional discovery.  R. 112, pp. 1-2.  Facts and defenses presented at

summary judgment were not included in the Defendants' own view of the facts,

and Defendants continued to characterize their own knowledge of relevant

circumstances in the same manner admitted in the answer.  *Id.*  By referring to the

"[y]ears of discovery about probable cause – beyond what is contained in the

particular documents refenced in the paragraph above - has already occurred . . .

[creating] a strong argument that the statement should be withdrawn,"  Def.'s

Brief, pp. 31-32 n. 4, the defense inadvertently makes a strong argument to bind

defendants to their admissions and creates another factual dispute that discredits

the defendants and operates to prevent summary judgment.

Defendants cite no persuasive authority in support of their effort to evade

their binding admissions, and most of the authority squarely supports Plaintiff's

view.  For example, Defendants cite *Keller v. United States,* 58 F.3d 1194, 1199

n.8 (7th Cir. 1995) for the proposition that their admission was "too vague."  The

*Keller* court analyzed statements of a doctor that were "not admissions," at all,

explaining in the cited footnote that courts treat testimony as ordinary evidentiary

admissions that "may be controverted or explained," whereas judicial admissions remove a fact from contention  *Id.  Keller* does not stand for any proposition advocated by Defendants, and their reliance thereon is misplaced.

The defense's effort to rewrite the meaning of their admission as meaningless is also unpersuasive.  The meaning of a material fact is well established as one affecting the outcome of a suit, s*ee e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and before the trial court, Defendants admitted that their admission included all facts pertinent to the outcome of probable cause.  R. 43, Def.'s Resp. Pl's LR 56.1 Facts, p. 14, ¶ 41 (the probable cause analysis "should be limited to *material* facts, that is, facts pertinent to the outcome of the issues identified in the summary judgement motion.")(emphasis in original).  The Defendants cannot contradict their prior admission and prior understanding so that they can win permission to plead undisclosed facts and theories at summary judgment.[3]

---

[3] The bottom line is that Defendants summary judgment theories were in large part not properly disclosed.  When asked to "state or identify each fact that provided probable cause to arrest or charge the Plaintiff with any offense," Defendants referred Plaintiff to a series of documents that did not materially change the original claims.  *E.g.,* R. 147-5, Rittorno's Answers to Pl.'s Interrogatories, p. 9, ¶ 11.  The defense responded to summary judgment by claiming that probable cause existed because of Defendants' observations of how "the female pit bull resided at the time they found her." R. 45, Def.'s Resp. Summ. Judg., p. 3; R. 44, LR 56.1 Statement of Facts by Defendants (omitting any facts beyond the documents included in the judicial admission); R. 43, p. 14 ¶ 41, LR. 56.1 Response to Plaintiff's Facts (admitting that "Defendants *contend* that the material facts relied on by the Defendants to support probable cause to arrest Plaintiff, to seize Macy, and to prosecute Plaintiff are set forth in: [Exhibits 1-4].")(emphasis added).

Defendants' evasion of their judicial admissions is part of a wider effort to aid the Defendants' effort to expand the factual basis of Plaintiff's arrest to include prejudicial facts, like Plaintiff beating his dog, and the Rules of Civil Procedure provide no discretion for courts to allow police officers to arbitrarily choose to expand their own knowledge at summary judgment.

### III. The Defense Does Not Identify Any Legal Or Factual Basis For Denying Mandatory Sanctions For The Failure To Disclose Facts And Defenses Before Summary Judgment, Relegated The Argument To A Footnote, And Failed To Cite Pertinent Authority, Resulting In Waiver

Defendants waived any argument opposing mandatory sanctions for their failure to disclose facts and defenses before summary judgment.  In opposition to Plaintiff's opening argument, the defense supplied this Court with a mere footnote. Def.'s Brief, p. 41, n. 10.  The defense characterizes Plaintiff's argument as "similar to Neita's meritless argument regarding judicial admissions, which is discussed on pages 29-31 of this brief."  *Id.*

Defendants do not deny the factual and legal basis for imposition of mandatory sanctions for the failure to disclose facts and defenses in support of probable cause that do not appear in their reports.  Defendants do not cite any relevant authority. Defendants do not deny that Fed. R. Civ. P. 37(c) automatically bars the Court from considering their undisclosed evidence.  Defendants make no argument at all and do not explain the supposed similarities, which do not exist.

Whatever legal effect may result from admissions to the Court differs

significantly from their duties to disclose, participate in, and supplement discovery under the Federal Rules of Civil Procedure.  Warrantless Fourth Amendment activity creates a legal presumption of unreasonableness.  *See Valance v. Wisel*, 110 F.3d 1269, 1278-79 (7th Cir. 1997)(relying on *Ruggiero v. Krzeminski*, 928 F.2d 558, 562-62 (2d Cir. 1991)).  "In a civil case, . . . the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.  But this rule does not shift the burden of persuasion . . .."  In a civil case, the presumption "serves to impose on the defendant 'the burden of going forward with evidence to meet or rebut the presumption, which a defendant would do by presenting evidence . . ..'"  *Valance*, 110 F.3d at 1279 (quoting F.R.E. 301).

The application of probable cause and qualified immunity to an arrest depend on the facts known to the officers.  *Tebbens v. Mushol*, 692 F.3d 807, 820 (7th Cir. 2012).  "Direct evidence of knowledge is difficult – sometimes impossible – to obtain."  *Pavlock v. Mifflin*, 90 F.3d 205, 209 (7th Cir. 1996).  Nowhere could that be truer than attempting to learn the alleged factual basis of an arrest for a man charged with not having his doghouse two inches off the ground after an officer grabbed his phone from him because his sister, a Chicago Police Officer, recommended he ask for a supervisor, which Plaintiff did.

Plaintiff submits that the defense's waiver is not just real but strategic and seeks to avoid being forced to admit that the exclusionary rules of Rule 37 apply to

the defense's summary judgment effort. Defendants do not offer any reason why they did not disclose the facts supporting their defense, and nor could they, for during discovery, they simply had a different defense. The shifting sands of their guilty consciousness prevent summary judgment.

In *Colburn v. Trustees of Indiana University,* 973 F.2d 581, 593 (7th Cir. 1992), the Court found that the failure to inform the court of a legal or factual basis for their claims resulted in waiver. In *Colburn*, the court found waiver where the party offered a single paragraph of argument that evidently included omitted citations. In *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013), the Court advised that "we have often said that a party can waive an argument by presenting it only in an undeveloped footnote." (citations omitted). Like the footnote in *Harmon*, Defendants presented only an undeveloped conclusory footnote without citation to law, facts, or the Rules of Civil Procedure. Waiver applies.

## IV.    Defendants Deliberately Conspired To Deprive Plaintiff Of His Right To Access The Courts And The Failure To Disclose Video Is No Mistake

Defendants misstate the law in arguing against sanctions, and the Court should require that the law be followed. Defendants do not deny that their certification violated the Rules of Civil Procedure or that the Rules of Civil Procedure mandate sanctions. Instead, Defendants argue that the District Court did not abuse its discretion in declining sanctions because "sometimes mistakes are made." Def.'s Brief, p. 41.

Defendants' argument misstates the law. "Rule 26(g)(3) gives the judge discretion over the nature of the sanction but not whether to impose one." *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015). The district court's discretion is limited to "the nature of the sanction but not whether to impose one." *Id.* Defendants' attempt to characterize the duty to correct representations as permissive instead of mandatory and characterization of the rules as "draconian" helps explain why even post-trial, Defendants were caught concealing evidence in their possession.[4] If the failure to produce the videos was an accident, then such a minor indiscretion would not warrant a severe sanction. Plaintiff expects a different result.

The defense's tiptoeing around the issue reflects the ethically perilous circumstances at issue. Defendants knew that videos existed because Rittorno specifically requested a body worn camera come to the scene to make recordings, and the district court relied on claims by Rittorno that she told her civil defense counsel in the beginning of suit about the videos. R. 167, p. 9. Yet, when Rittorno testified to that effect on November 2, 2020, defense counsel Emily Dory knew her client's testimony was false. *See* Pl's Brief, pp. 25-26. As Plaintiff cited and the defense does not deny, Emily Dory claims she was first told of the videos the week

---

[4] R. 181, Reply In Support of Bill of Costs, p. 7 (withholding documents about witnesses because the "files were not responsive to any of Plaintiff's discovery requests.); R. 147-9, p. 4, ¶ 9 (Rule 34 request for documents about the parties and witnesses).

of October 2020 when they were produced, contradicting her own client.  *Id.*

The defendant officers did not want to disclose the videos because the videos undermined their claims and credibility, and upon information and belief, Emily Dory did not learn about the videos from her clients, in any event.  This Court should remand for the district court to impose an appropriate sanction; Plaintiff agrees with the defense that the record does not contain enough information to determine the appropriate sanction.

## V.     The District Court's Acceptance Of Rittorno's Sham Defense Contradicts The District Court's Own Reasoning

The district court erred by permitting Rittorno to change prior testimony through an affidavit in support of summary judgment.  The district court determined that because of "a genuine issue about Rittorno's credibility, . . . the court has not relied on Rittorno's deposition as the sole evidence in support of any fact in conducting its review of the record."  R. 167, pp. 8-9.  Yet, the court exclusively relied on Rittorno's summary judgment affidavit in support of her self-serving claim that at her deposition, she failed to remember facts that supported summary judgment.  That does not make sense.

But even if it did, Plaintiff concedes that Rittorno's affidavit is not a sham affidavit because it does not create a sham dispute to avoid summary judgment. The affidavit and its attachments are automatically barred by Rule 37 and themselves create material disputes of fact between Rittorno's various versions of

17

the truth.  Creating a dispute of fact through an affidavit and then attempting to

rely on it in support of summary judgment just does not make sense in a summary

judgment context.

## VI.  Qualified Immunity For Plaintiff's Arrest Does Not Bar Plaintiff's Retaliatory Arrest Claim

The district court erred by dismissing Plaintiff's retaliatory arrest claim.  The

parties did not argue or brief the merits of Plaintiff's retaliatory arrest claim before

the district court, and Plaintiff agrees with Defendants that if probable cause

existed for Plaintiff's arrest, then his retaliatory arrest claim fails.  If probable

cause for Plaintiff's arrest did not exist, then Plaintiff's retaliatory arrest claim

should proceed, especially where the facts demonstrate a clear inference of

retaliatory motive.

However, qualified immunity from Plaintiff's false arrest claim does not

protect Defendants from Plaintiff's retaliatory arrest claim, unless probable cause

existed.  As the Supreme Court held in *Hartman v. More*, "a retaliatory motive . . .

combined with an absence of probable cause . . . are reasonable grounds to suspend

the presumption of regularity . . . and enough for a prima facie inference that the

unconstitutionally motivated inducement infected" an official's decision.  547 U.S.

250, 265 (2006) (applying qualified immunity to retaliatory prosecutions).  As the

Court thus observed in *Nieves v. Bartlett*, the absence of probable cause will

"generally provide weighty evidence that the officer's animus caused the arrest,

whereas the presence of probable cause will suggest the opposite." 139 S. Ct. 1715, 1724 (2019). In this case, even if the law on animal cruelty was not clearly established, officers violated clearly established law by making an arrest without probable cause motivated by animus. This Court should reverse.

## VII.  <u>Defendants Cannot Present A New Basis To Seize Macy</u>

Defendants' effort to justify the seizure of Macy on grounds not presented to the trial court should be rejected. Defendants do not deny that the only argument ever presented to the trial court in support of summary judgment to justify the seizure of Macy was the incident to arrest exception, citing 510 ILCS 70/3.04. R. 136-1, p. 12. And defendants now concede that the seizure of Macy before Plaintiff's arrest cannot be justified on this basis. The district court should be reversed.

The court of appeals may not affirm summary judgment on a basis not presented to the trial court. *Lexington Ins. Co. v. RLI Ins. Co.*, 949 F.3d 1015, 1025 (7th Cir. 2020) (citing *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985)). Defendants bore the burden in the trial court to prove their entitlement to summary judgment and to present their prima facie justification for their warrantless activity, and defendants may not seek affirmance of the district court's opinion on any other grounds; because Defendants concede that 70 ILCS 70/3.04 does not apply to the pre-arrest seizure of Macy, summary judgment is improper.

Finally, Defendants' argument that qualified immunity applies is belied by their own application of the clear limits of the authority to seize pets under 70 ILCS 70/3.04, which only authorizes seizures incident to an arrest under the Act, not before one was made.

### VIII.  <u>Fourth Amendment Malicious Prosecution Should Proceed</u>

Defendants argue that the Court should affirm the dismissal of Plaintiff's federal malicious prosecution claim due to a lack of probable cause.  However, defendants do not make any argument that probable cause existed for the charges against Plaintiff or for that matter even cite to them.   Defendants instead mistakenly argue that "the probable cause that supports Neita's arrest also supports his prosecution," Def.'s Brief, p. 37.  The district court already denied the Defendants' motion to dismiss Plaintiff's state law malicious prosecution claim on the grounds of probable cause, and Defendants have not appealed that decision. Appx. 26.

Defendants' claim that probable cause for Plaintiff's prosecution is justified on the same basis as Plaintiff's arrest is incorrect.  A "federal malicious prosecution claim . . . borrows the elements of the state tort."  *Katz-Crank v. Haskett*, 843 F.3d 641, 649 (7th Cir. 2016)(citation omitted).  As *Thompson v. Clark*, 596 U.S. 36, 43-44 (2022) explains, a federal malicious prosecution claim examines "the wrongful initiation of charges without probable cause."  In a

malicious prosecution context, "the basis for each charge must be examined separately, and if probable cause was lacking as to any charge, the defendants still may be held liable for his prosecution on that unsupported charge." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007).

In this case, Defendants charged Plaintiff with cruelty to animals because he "did not provide the require shelter for an animal, no food or water, padding on the ground or a two inch minimum ground clearance." R. 139-16, p. 1. Defendants also charged Plaintiff with violating his duties because "it was 19 degrees and snowing outside, the dog was chained to the bumper of an abandoned vehicle, no food or water, padding on the ground, or a 2 inch minimum ground clearance inside a wooden shelter." R. 139-16, p. 2.

Probable cause did not exist for either charge because Defendants knew the doghouse had a heater, R. 1-3, p. 13, did not check the doghouse for padding, R. 139-6, pp. 63:12-25, 282:3-11, the two-inch "requirement" does not exist, R. 35, p. 7, ¶ 30, and Defendants did not know how long, if at all, Macy had been without food or water. R. 139-6, Rittorno Dep., pp. 73:18-20, 166:2-9. The Court should reinstate Plaintiff's federal malicious prosecution claim.

## <u>CONCLUSION</u>

The District Court erred for the reasons stated above, and this Court should reverse and remand.

21

Respectfully Submitted,

Vaughn Neita

By: /s_ Jared Kosoglad_____

Jared Kosoglad
JARED S. KOSOGLAD, P.C.
111 N. Wabash # 3166
Chicago, Illinois 60602
312.513.6000
Attorney for Plaintiff/Appellant
Vaughn Neita

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with FED. R. APP. P. 32(g), I certify that the Reply Brief of

Plaintiff-Appellant complies with the type-volume limitation set forth in FED. R.

APP. P. 32(a)(7)(B)(ii) and Cir. R. 32(c) because it contains 5,124 words,

beginning with the words "ARGUMENT" on page 1 and ending with

"Respectfully Submitted" on page 22. In preparing this certificate, I relied on the

word count of the word-processing system used to prepare this brief, which was

Microsoft Word.

/s Jared Kosoglad_____
Attorney for Plaintiff/Appellant
Vaughn Neita

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2023, pursuant to Circuit Rule 25, an electronic version of this brief in non-scanned PFD format was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in this appeal are registered CM/ECF users who will be served by the CM/ECF system on November 3, 2023.

/s Jared Kosoglad_____
Attorney for Plaintiff/Appellant
Vaughn Neita